Good morning, Your Honors. Douglas Nelson, on behalf of the petitioner. When we look at the Immigration and Nationality Act, there's three very apparent things contained therein. That act allows refugees, in order to receive protection, it allows foreign employees to come to the United States. But most importantly, it allows families to be reunified in the United States and to live together as families. Now, in that context, the Ninth Circuit decided the Lepe-Guitron case, which allows a mother to impute her lawful, unrelinquished domicile to that of her child. Now, in 1997, the Congress changed 212C. In fact, it took it out of the act and replaced it with what's called cancellation of removal. Instead of using the word domicile, it used the word residence. The question before this Court is, are those words, domicile and residence, sufficiently distinguishable so that a parent can no longer impute their residence or their dwelling or their life in the United States to that of their children? Now, let's look at the particular facts of this case. My client came to the United States without documents in 1988. That same year, his mother received her legal permanent residence status. It was a temporary status based upon the amnesty program. And in 1989, she became a full legal permanent resident. Now, you may ask, why didn't the son become a legal permanent resident at the same time? Because he was subject to a family preference system. And as a child of a legal permanent resident, he had to wait for a visa because the quotas had run out. There were insufficient visas for him. But doesn't that speak to the issue that, in fact, the law makes it, the existence of that provision makes it pretty clear that the fact that your parent has lawful status doesn't automatically afford lawful residence status to a child? That's correct. He does have to go through the process. But this is the same scenario as the Lepaguetron scenario, where that individual did not have legal permanent residence or lawful unrelinquished domicile at the time that he needed to prove seven years of unrelinquished lawful domicile. He, in that case, the parents had become lawful permanent residents, and he had not. He did not become a lawful permanent resident until 10 years later. But, nevertheless, this Court found that under common law principles, he should be or the parents should be allowed to impute their domicile to the child. So in 1989 the difference between the term residence and domicile. In the context of family reunification and the Act, the difference is slight, if at all. But let's address each of those specific words. It can be argued, Your Honor, that in 1997, when Congress changed the words, they lessened the requirements because domicile requires basically two things, intent and a place of dwelling or contact with the place where you're going to dwell, whereas residence does not require intent. It's simply where you live. Now, it's interesting to note that under the Lepiketron decision, a child could potentially live outside of the United States. But so long as the parent was domiciled here, the parent's domicile can be imputed to that child. Under the new standard, it's residence. And so if the child lives with the parent under the same roof, then they should be afforded the opportunity for the parent to impute their residence. But the word lawful enters into it. So that in your first case, peculiar but certainly possible, where the child is actually back in Mexico, but the parents are here, and this becomes his domicile as a result, according to principles of common law, which is how the statute then called upon us to define the term domicile, it could be argued and was concluded in the Lepiketron case that domicile must point to where the parents are. And it's lawful. He's not violating the immigration laws. He happens not to be in the United States at the time in this hypothetical. You flip it around, he may be a resident in the United States, but that doesn't make him lawfully resident if, because you've already described, the law requires him to stand in line until it's his term with the approved visa to come in. And so, although I understand how residence may be easier to obtain than domicile, I'm not sure that lawful residence is easier to obtain than lawful domicile. Well, Your Honor, but when you look at the Lepiketron decision, that alien did not have any lawful domicile or lawful residence at the time. He had entered the United States as a visitor and remained here for 10 years, and visitor visas don't last that long. So he had obviously accrued unlawful presence in the United States. But nevertheless, the Court allowed him to use some of that time, at which time his parents were lawfully domiciled here, and count that towards the pardon that he had required or he had requested. So the scenarios are very, very similar between Lepiketron and this case. The only distinction is the difference between the words domicile and residence. Now, when I was referring to that argument about a child being outside of the United States but nevertheless being allowed to impute the parent's residence, I thought that was important because it would be presumed that a child in the United States would have greater standing to impute their parent's residence to them than a child who is outside of the United States. And those are the facts of this case. This petitioner lived under the same roof as his legal permanent resident mother. She obtained that status in 1989. He obtained his status in 1993. Four years later, he was convicted of an offense which can be pardonable if he's allowed to impute his mother's residence. Now, that pardon is not automatic. We're just trying to fulfill the legal requirements so he can go forward and present to the immigration judge the equities in this case. And I think he should be afforded that opportunity. Now, the judge in this case stated that L'Epiguetron is specific to its facts. But I think we've demonstrated in our brief that that is not the case. L'Epiguetron was cited in the asylum context, that where a parent is, so are the children. In that case, the parent was living in a foreign nation before coming to the United States and applying for asylum. And the holding in that case, the Dow, Vong, D-A-O-V-A-N-G case, stated that the child's or the parent's place of dwelling or residence should be imputed to the children and they were no longer eligible to apply for asylum because they had firmly resettled in that country. But didn't that focus upon the intent issue and whether the intent of the parent should be visited on the child because of the child's inability to form lawful intent? That's correct, Your Honor. But likewise, in this circumstance, in this petitioner's case, my client had no ability to form the intent as to where he would reside. It was decided by his mother. By the way, his father was deceased. It was decided by his mother. He couldn't form that intent. He couldn't decide where he was going to reside. It was controlled by adults. And therefore ---- But doesn't residence, as is classified here in particular, lack a requirement of intent? Yes, it does. And that's why I go back to my argument that potentially Congress made it easier in order to impute the residence to a child because it took out the intent requirement. But they also required an application, didn't they? I'm sorry. Congress also required an application for a visa. Before he's entitled to the same status as his parents, who are residing in the United States, there's an application process that he is charged with, even though he's a child, isn't there? Yes, there is. But we go back to the L'Epiguetron, and these scenarios are similar. I mean, they're almost identical in that L'Epiguetron had no status and had no application. Well, I'm sorry. He did have an application, but there was an estoppel argument in there that it had been delayed. The completion of that application had been delayed. But he didn't have any status. He obtained his status after his mother received her status, and his mother's status was imputed to him. The exact same scenario that we have here. Was his mother's status imputed to him for anything more than the term domicile? I mean, the majority decision in L'Epiguet doesn't talk about lawful very much separately, perhaps because domicile isn't otherwise a concept within the immigration laws. I'm not sure what lawful domicile would mean. So they were focused on domicile. But lawful resident has a very clear meaning under the immigration law. He doesn't have it himself. Now, I understand the argument is that he gets it through his mother, but he doesn't have it himself. And we all know that because he's standing in line with his visa application until it's his turn. So while I hear your argument, I guess I'm still troubled by the notion that the domicile, when Congress changed the law to make it lawful resident, it made it easier. We know that for his own sake, he's not a lawful resident. My time is running out, but there's a very important component to this, and I think it must be explained. When you look at cancellation of removal, the first requirement is that the alien be admitted, lawfully admitted for permanent residence for not less than five years. Okay? So that's where the technical requirement of lawful permanent residence is. The second requirement is that the alien resided in the United States continuously for seven years after having been admitted in any status. It's the second prong, the second requirement that we are concentrating on, because he absolutely fulfills the first requirement. There's no stop gap measure, no stop time rule that applies to the first requirement. He's been a legal resident for more than five years. The question is the second requirement. Did he accrue seven years before committing an offense which would stop the time which would allow him to be here? And in that second requirement, it does not say he has to be admitted for lawful residence, merely that he has resided in the United States continuously for seven years after having been admitted in any status. Was he ever admitted? We are attempting to impute the mother's admission as a legal permanent resident to him to fulfill that second requirement. And finally, again, we're talking about common law principles here and unification of families. I think those in the context of all the immigration laws, when you examine this problem, clearly it should be decided in the alien's favor so that this family can remain together. Thank you very much. Thank you. Okay. All right. We'll hear from the government. May it please the Court. My name is Jennifer Pazner on behalf of the Respondent, Alberto Gonzalez. In looking at this issue, we have to focus on the statutory definition of cancellation of removal. The Court's decision in La Peguitron was promised upon a former type of relief, relief under 212C. With cancellation of removal, Congress took out the word domicile and inserted the word residence. So under 240A, the provision for cancellation of removal, an alien must show that he has resided in the United States continuously for seven years after having been admitted in any status. And the definition section of the INA at 101A.33 defines residence as a principal actual dwelling place, in fact, without regard to intent. If we look at the Court's decision in La Peguitron, it was premised upon the definition, the common law definition of domicile, because domicile was not defined in the INA. So the Court looked to the common law definition, which emphasized intent, and the Court found that a child is legally incapable of forming intent. No intent is necessary anymore. All that is required is actual physical presence. So the premise of the Court's decision in La Peguitron is no longer applicable, and there is nothing else in the INA that provides that somehow a child who does not have continuous physical presence for seven years, that somehow his mother's presence can be imputed to him. The Court's La Peguitron was premised upon a definition in the INA that allowed that to happen. Because that definition is no longer there, there's nothing in the INA that permits that. And in fact, the cancellation of removal provision and the definition of residence makes it very clear that in order to be eligible for cancellation of removal, every alien must have seven years of continuous physical presence after having been lawfully admitted. So that's one aspect of the issue, the difference between the definitions of domicile and residence. I'd also like briefly to talk about the sort of policy implications of the Court's decision in La Peguitron, which we would submit, we would submit that the two cases are not nearly identical. In La Peguitron, as I understand it, the alien had been lawfully admitted, as under a visa, I suppose a visitor's visa, and then lost that status because he overstayed his visa. His family then became lawful permanent residents. He didn't become a lawful permanent resident at the same time due to some sort of processing error. But he was lawfully admitted at the beginning. And so the Court in La Peguitron talks a lot about how it talks about severing the bonds between parents and their children who had resided legally in the United States for the better part of their lives. These children had lawfully formed strong ties to the United States. It's premised upon children who lawfully entered the United States and then lost that status due to a processing error, which the Court also makes it clear in La Peguitron was an integral part of its decision. Here, he entered illegally. He was not lawfully admitted in any form until I believe it was 1993 when he gained his lawful permanent residence status. And I think that difference is important, because until 1993, he hadn't lawfully formed any strong ties to the United States. He may have formed ties to the United States, but they were unlawful. And that is because he had to wait in line to get under the preference rules to be admitted as a lawful permanent resident. And so that difference is very important. And finally, I'd like to point out that he did obtain his lawful permanent residence status. So the goals in the INA of family reunification and keeping families together and all the rest of it, he did obtain lawful permanent residence status. He waited in line, he went through the process, he became an LPR. He could stay here lawfully with his mother. Four years later, he did something to lose that lawful permanent residence status. He committed the crime that made him removable from the United States. And so now we're faced with the question as to whether he can then obtain cancellation of removal, and somehow whether his mother's residence can be imputed to him. But it's not a situation where he was never entitled to lawfully remain in the United States with his mother. He was. He obtained lawful permanent residence status, and then he lost it through his own actions, which is an important factor to keep in mind as background. But aside from all those policy considerations, the key distinction between Lepe-Guitron in this case is the statutory language, the difference between domicile and residence, and the fact that there is now no provision in the INA that would allow his mother's residence to be imputed to him to somehow give him the necessary seven years of continuous residence. Well, you know, you're right. You know, there is that distinction there. But I was on that panel. Judge Betty Fletcher did the opinion. I concurred. But I think what motivated the opinion in large part was, as she states there, this provision was enacted to alleviate the harsh effects of deportation on those aliens who have lawfully established substantial ties to the United States. So really behind that is this idea of keeping families together. And, you know, the language there, domicile was the hook. Would you like me to address that? That's been 11 years. See, he came here when he was eight years old. How old is he now? He was eight years old in 86. Twenty-something. Okay. Anything else? If the Court has no further questions, I have nothing further. Thank you. A rebuttal. Well, I can take 30 seconds. The government only used eight, well, 12 minutes. So you're making a present to you. Eight minutes and 16 seconds. I'll keep it short. The government made a big issue of the fact that my client entered the United States illegally. But that was not his choice. He was a child at the time. And I think it's also important to note that there are numerous provisions in the Act which allow people who enter without documents to remain here. If they establish that their families would suffer extreme hardship or that they filed their petition before April 3rd. 30 to 2001 under INA Section 245I, that allows a person to adjust their status despite the fact that they entered without documents. So, and the status of the law doesn't say as an alternative to the requirements to be eligible for the cancellation or could have regularized your status at some time in the past but failed to avail yourself of the opportunity. It's especially harsh in the context of children because minors can't act for themselves. But Congress could provide for that and it doesn't appear that Congress has provided for that. And Congress didn't provide for it when L'Epigatron was decided. As government counsel stated, a domicile was not defined in the Act anywhere. And they had to rely upon the courts to apply the common law principle that a parent's domicile should be imputed to the child. The government also stated that L'Epigatron had received legal permanent resident status. Eventually he received that status. Well, so did my client. And in that circumstance, my client did receive that status. Now, we cannot justify every alien staying here for family reunification purposes. And for that, there is a mechanism, a discretionary mechanism, which would allow a judge to weigh the good and the bad in these people's lives and decide whether they still deserve to stay here, whether those family bonds are greater than the harsh consequences of deportation. And so we are asking that this alien be allowed the opportunity to present that discretionary claim to the immigration judge. Thank you. If there's nothing further, then I will close. Well, where's he now? He's present today, Your Honor, with his fiancée, his brother, and his mother. Well, we do weddings, too, you know. Thank you, Your Honor. See you later.
judges: Pregerson, Clifton, Hicks